# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8568 | **DATE** | 11/12/2004 |
| **CASE TITLE** | Kathleen Schreiber vs. Chicago Mercantile Exchange | | |
| **MOTION:** | [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.] | | |

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Chicago Mercantile Exchange, Inc., Motion for Summary Judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **NOV 15 2004** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | rbf | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 NOV 12 PM 3:41 | date mailed notice | |
| WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED
NOV 1 2 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DOCKETED
NOV 1 5 2004

KATHLEEN SCHREIBER,

    Plaintiff,

v.

CHICAGO MERCANTILE EXCHANGE, INC.,

    Defendant.

Case No. 03 C 8568

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This case arises out of Defendant Chicago Mercantile Exchange's (the "CME") termination of Plaintiff Kathleen Schreiber's employment while Schreiber was on Family and Medical Leave Act ("FMLA") leave. Before the Court is CME's Motion for Summary Judgment, which is **GRANTED**.

### I. INTRODUCTION

The following facts are either undisputed or taken in the light most favorable to the non-movant. In 1985, Schreiber began her employment as a secretary for CME, a futures exchange. After several promotions, Schreiber became the Corporate Communications Representative of the Corporate Communications Division (the "Division") in 1997, a position that she held until her termination in September 2003. While in such position, Schreiber reported to William Burks, the Associate Director of Corporate Relations, who in turn reported to Ellen Resnick, Director of Corporate Relations.



The Division falls within the larger umbrella of the Corporate Relations Department (the "Department").

### A. Schreiber's FMLA Leaves

Schreiber took two FMLA leaves during her tenure at CME. Her first FMLA leave was in August 2000 for the birth of a child. Schreiber returned to CME after a twelve-week leave in November 2000. Schreiber suffered no adverse employment actions as a result of taking FMLA leave. In fact, Resnick, who had previously taken maternity leave herself, reacted happily to Schreiber's maternity news, hugging Schreiber and expressing excitement for her. (D. SOF ¶ 9).

In late December 2002 or early January 2003, Schreiber announced to the employees in the Division that she was pregnant again and would be taking another FMLA leave. In March 2003, Schreiber met with CME's Employee Benefits Manager regarding her request for FMLA leave, who explained CME's FMLA benefit plan to Schreiber. In addition to the full twelve-weeks of FMLA leave, Schreiber requested an additional two weeks of vacation prior to the start date of her FMLA leave. CME granted her request. Schreiber began vacation in late June 2003, and she gave birth to her baby in early July. She was scheduled to return to her job on September 24, 2003. Schreiber acknowledged that "[a]t no point did anyone at CME suggest . . . that her job could be in jeopardy if

she took FMLA leave, nor did anyone ask her to perform any job duties while on leave." (D. SOF ¶ 37).

### B. CME's Organization and IPO

Prior to December 2002, CME operated as a private company. In December 2002, CME undertook an initial public offering (the "IPO"). In preparation for the IPO, CME embarked on various changes to reorganize and upgrade the Division, including hiring Anita Liskey as Director of Corporate Communications to oversee the Division. At this time, the Division consisted of eight employees under Resnick, including: Liskey; Burks; Schreiber; Thielen, the Associate Director of Corporate and Financial Communications; Kosin, the Manager of Broadcast Communications; Bongat, the Production Assistant of Broadcast Communications; Love, the Clips Production Editor; and Stevenson, the Assistant to the Director. The Division was "fairly cross-functional, meaning that the Division members provided back-up support for each other in many areas." (D. SOF ¶ 26). Schreiber, Resnick, Burks and Thielen had all taken FMLA leave or other maternity leave during their tenure at CME. See id. ¶¶ 93, 113-14.

In 2003, Schreiber mainly performed administrative duties and back-up tasks that were also shared by other employees in the Division, such as answering calls, escorting media, and disseminating press releases. Schreiber also had certain duties assigned specifically to her, but CME planned to eliminate several

of such tasks, including the quarterly agricultural teleconferences, MercWide internal newspaper, and daily agricultural commodities update. (D. SOF ¶¶ 17-20). Resnick testified that Schreiber "was not that busy a lot of the time," (Resnick Dep. at 71), and Liskey attested that Schreiber "did not have enough work to keep her busy on a consistent basis." (Liskey Aff. ¶ 9). Schreiber herself testified that in 2003 "sometimes it was really busy and sometimes it wasn't." (Schreiber Dep. at 76). Schreiber was not reprimanded or otherwise disciplined during her tenure at CME. (Pl. ASOF ¶ 61).

Over the spring of 2003, the Department continued with its reorganization plans. Resnick and Liskey met with the Director of Organizational Development (collectively, the "Directors") to evaluate whether the job positions and employees within the Division performed to the level required of a newly public company. The Directors continued to meet over spring and summer and conducted strategy meetings aimed at elevating the performance of the Division. The Directors concluded that the Division needed "a stronger writing team and a more sophisticated knowledge of the CME product." (D. SOF ¶37). In response, Resnick and Liskey worked with the Organizational Development Department to construct a new organizational chart, and as a result, CME eventually added the following positions: Manager of Product Communications, Manager of Technology Communications, Senior Writer, and Production Assistant.

(D. SOF ¶ 37). CME also eliminated Schreiber's Representative position. Liskey attested that:

> when we performed the restructuring analysis, it was apparent that Schreiber simply did not have enough to do, that her job duties could be easily shifted to others who were either more skilled (i.e., Thielen and Burks), or in lower-level administrative positions (i.e., Stevenson), and that she did not have the skill set to move into another open position. These factors, and nothing related to her leave, motivated the decision to eliminate her position and terminate her employment.

(Liskey Aff. ¶ 37). Although the Directors attempted to fit their existing personnel into the new organizational chart, they did not assign Schreiber to one of the new positions.

Liskey contacted Schreiber on September 22, 2003 and requested that she come to the office for a meeting. At that time, Liskey informed her that the Division was going through a reorganization and that her position had been eliminated. The next day, Liskey and CME's Associate Director of Human Resources called Schreiber and further explained that, due to the reorganization, her position was eliminated effective immediately. During the telephone conversation, they explained CME's severance package, which generally included six months of salary and COBRA coverage, outplacement services, and a no-rehire provision which CME later agreed to modify to a one-year provision. On September 25, 2003, Schreiber received a letter memorializing the telephone conversation, which explained:

> [CME] management had analyzed the staffing levels in the department to optimize performance, determined that the Corporate Communications Representative position did not require full-time attention, and decided to eliminate the position and discontinue or distribute the duties of that position to other employees.

(D. SOF ¶ 48). Schreiber admitted that she had no reason to believe that any of the statements in the letter were untrue. (Schreiber Dep. at 132-134).

After Schreiber's position was eliminated, others in the Department absorbed her job duties, including Stevenson, Burks, Resnick, Thielen, Liskey, and Love. (D. SOF ¶ 49). Although people in the Division became more busy, Burks testified that his workdays did not get any longer as a result of absorbing many of Schreiber's work functions. (Burks Dep. at 45).

The Department and Division continued to change, and CME hired professionals to fill two of the newly created positions. In December 2003, Resnick resigned from her position as Director of Corporate Relations, and CME appointed a new director. In late 2003, the Corporate Relations Division (also in the Department) also eliminated its Representative position and terminated Tracy Redmond, the individual holding that position. (Liskey Aff. ¶ 35; D. SOF ¶ 53). Redmond was not on FMLA leave at the time of her termination, and had not taken FMLA leave since December 2002. (Pasterski Aff. ¶ 3).

In February 2004, CME advertised an administrative position, (Pl. Ex. P). Schreiber applied for the position but was not selected because it was a lower level position with less pay than the position she previously held and "she was not a good fit." (Egan Aff. ¶¶ 4-5). The administrative position was filled in May 2004. See id. ¶ 34. On December 17, 2003, Schreiber filed this two-count complaint.

## II. **DISCUSSION**

Schreiber claims that CME retaliated against her and failed to reinstate her in violation of the FMLA, 29 U.S.C. § 2601, et seq. CME moves for summary judgment on both claims. The summary judgment standard is well-established. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court addresses Schreiber's claims in turn.

### A. Retaliatory Discharge

Schreiber's first count alleges retaliation. Sections 2615(a)(2) and 2615(b) of the FMLA govern claims for retaliation, and state in part "it shall be unlawful for any person to discharge . . . any individual because such individual . . . has instituted or caused to be instituted any proceeding" under the FMLA. 29 U.S.C. § 2615(b). The Seventh Circuit has held that retaliation cases under the FMLA are evaluated in the same manner as retaliation claims under other employment discrimination statutes, such as Title VII and the ADA. See Buie v.

Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004); King v. Preferred Technical Group, 166 F.3d 887, 892 (7th Cir. 1999).

To prevail on a retaliation claim under the FMLA, a Plaintiff must prove, either directly or through circumstantial evidence, that intentional discrimination motivated the adverse employment action. Buie, 366 F. 3d at 503; King, 166 F.3d at 891. This can be proven by the direct or indirect method. Here, the parties acknowledge that there is no direct evidence of discriminatory intent and advocate the use of the indirect methods. Under the traditional McDonnell Douglas test, the plaintiff is required to present evidence on four elements to make a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The Seventh Circuit has articulated an adaptation of the McDonnell Douglas test for the retaliation context, which

> requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner. If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment.

Stone v. City of Indianapolis Public Utilities Division, 281 F.3d 640, 644 (7th Cir. 2002); see also Rogers v. City of Chicago, 320 F.3d 748, 755 (7th Cir. 2003). The Seventh Circuit also held that [w]hen plaintiffs proceeding under the burden-shifting formula of

McDonnell Douglas cannot produce competent evidence that they were treated differently than similarly situated employees, we must affirm the granting of summary judgment on that basis." Rogers, 320 F.3d at 755. This adapted standard eliminates the requirement that "the plaintiff prove a 'causal link' between his protected action an adverse employment action." Id.

Schreiber contends that her termination was part of a mini reduction in workforce (a "mini-RIF"). A mini-RIF occurs when an employer "is discharged and his position is not filled. However, the employees' responsibilities are assumed by other members of the corporate workforce." Michas v. Health Cost Controls of Ill., 209 F.3d 687, 693 (7th Cir. 2000). Unlike the traditional McDonnell Douglas test, the plaintiff in a mini-RIF case need not demonstrate that similarly situated employees were treated more favorably. See id. "Instead, because the fired employee's duties are absorbed by other workers and the employee was ''replaced', not eliminated,' [the Seventh Circuit] only require[s] that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class." Id. (citations omitted).

CME responds that the traditional McDonnell Douglas test should apply here because Schreiber's termination did not involve a mini-RIF. Specifically, CME contends that it also eliminated other employees' positions during the course of the reorganization, and that Schreiber failed to cite any authority sanctioning the

- 9 -

mini-RIF analysis for FMLA claims. CME alternatively argues that even if the mini-RIF analysis applies, Schreiber has failed to make a prima facie case of retaliation because there is no evidence that her job duties were absorbed by employees who were not members of the protected class.

Based on an extensive review of the record, the Court concludes that Schreiber has not presented evidence to demonstrate that she is capable of making a prima facie case of retaliation against CME under either standard. It appears to the Court that the mini-RIF standard is inapplicable here because CME also terminated other individuals in the Department as a result of the reorganization. For example, Tracy Redmond was also terminated from her Representative position in late 2003 as a result of the reorganization. Additionally, the Court notes that even if the mini-RIF standard was applicable, a critical aspect of a mini-RIF analysis is whether the terminated employee's job duties were absorbed by other employees who were not in the protected class. Here, the evidence presented reflects that several of the employees who absorbed Schreiber's job duties were part of the protected class because they had themselves taken FMLA leave from CME. CME redistributed a good portion of Schreiber's duties to Burks, who had recently returned to work in June 2003 after seven-weeks of FMLA leave. (D. SOF ¶¶ 49, 93). Schreiber herself took FMLA leave from CME in 2000 and suffered no adverse employment action.

Schreiber similarly fails to present evidence to make a prima facie case under the McDonnell Douglas test. The evidence, taken in the light most favorable to Schreiber, shows that Schreiber presented evidence to show that she took FMLA leave, was terminated, and was performing her job satisfactorily (no discipline and acceptable scores on evaluations). Schreiber, however, presented no evidence that similarly situated employees who did not engage in the protected conduct were not subject to termination. To the contrary, CME also terminated Redmond and eliminated the comparable Corporate Relations Representative position in late 2003. Redmond was not on FMLA leave when terminated and she had not taken such leave for two years prior to her termination.

Even assuming that Schreiber had made out a prima facie case of retaliation, summary judgment would still be required in favor of CME because Schreiber failed to show that CME's proffered reason for her termination to be "unworthy of credence." Gordon v. United Airlines, Inc., 246 F. 3d 878, 888 (7th Cir. 2001). CME contends that it terminated Schreiber because her position was eliminated as the result of a reorganization. As part of this reorganization and improvement effort, it eliminated Schreiber's position and added other new positions to the department. As discussed in detail in the Section I of this Memorandum, CME presented evidence that Schreiber's position as it existed in 2003 did not require a full-

time employee as evidenced by the facts that Schreiber was not busy and the individuals who absorbed her duties did not experience an increase in the length of their workdays due to such responsibilities. Further, Schreiber's job duties were largely administrative and back-up tasks.

Schreiber attempts to challenge the credibility of CME's reasoning by arguing (1) that Schreiber's position was the only position in her Division that was eliminated; (2) that Schreiber was terminated despite the fact that the Department was busy; (3) that CME later hired an administrative assistant to assist the Department; (4) that CME eventually terminated other employees who had taken FMLA leave; (5) there was a one year no-rehire clause; and (6) that Schreiber was terminated two days before she was scheduled to return to work. Schreiber's first argument is not supported by the record. The remaining arguments, even if and taken in the light most favorable to Schreiber, do not rebut CME's legitimate reason for terminating her. The record reflects that CME's restructuring was a task-based objective, and that the Directors held multiple meetings to plan the restructuring effort before making any job determinations. (D. SOF ¶¶ 35-37). Although the Division was busy, the employees who assumed Schreiber's work responsibilities did not endure longer working hours as a result of such duties. Schreiber herself admitted that she had no reason to believe that the reasons that CME stated in their letter for

terminating her were untrue. (Schreiber Dep. at 132-134; D. SOF ¶ 48).

The fact that CME created new positions, and eight months later filled an administrative assistant position, is not evidence that CME eliminated Schreiber for any reason other than the IPO and reorganization, and her lack of work. Conversely, such evidence supports CME's contention that the Division, and indeed the entire Department, was in the process of organizational change at the time of Schreiber's termination. Further, the timing of Schreiber's termination alone is not sufficient to create a triable issue of fact. See Stone, 281 F. 3d at 644 (stating that the "mere temporal proximity between the filing of the charge and the action alleged to have been taken in retaliation . . . will rarely be sufficient in and of itself to create a triable issue"). Significantly, Schreiber herself took FMLA leave in 2000 and did not suffer any adverse employment actions, as did several of the other employees in the Division. Given that the evidence presented does not rebut CME's noninvidious reason for Schreiber's termination, CME's motion for summary judgment is granted with respect to Schreiber's retaliation claim.

### B. Failure to Reinstate Schreiber

In her second count, Schreiber alleges that her termination constitutes "interferences with, restraining, and/or denying . . . [her] exercise of her FMLA rights, in violation of the FMLA,

29 U.S.C. §2601 et seq." (Complaint ¶ 26). Schreiber contends that by terminating her, CME "refused to afford Plaintiff her former position or an equivalent one . . . [thereby restraining and denying Schreiber] of a substantive right to which . . . [she] was entitled under the FMLA." (Pl. Reply Mem. at 13).

An employee that is legitimately terminated while on FMLA leave is not entitled to reinstatement. See 29 C.F.R. § 825.216(a). Under 29 C.F.R. § 825.216(a),

> [a]n employee has no greater right to reinstatement or to any other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

Id. Further, the Seventh Circuit has specifically upheld an employer's right to terminate an employee during FMLA leave for reasons unrelated to the FMLA leave. See Kariotis v. Navistar Int'l Transp. Corp., 131 F. 3d 672, 682 (1997). Thus, to support a claim for failure to reinstate, Schreiber must present evidence to show that her termination was directly related to her FMLA leave.

This Court has already held that Schreiber presented no evidence to cast doubt on the legitimate reason provided by CME for terminating Schreiber. Since the reorganization was not related to Schreiber's exercise of FMLA rights, CME was not under any

obligation to reinstate Schreiber once her position was eliminated. Therefore, like her retaliation claim, Schreiber's second count fails because the record does not reflect that CME acted with discriminatory intent in eliminating Schreiber's position.

### III. CONCLUSION

For the reasons set forth above, CME's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: November 12, 2004